## CHESTER KINGSLEY *v.* FITTS & AVERY.

### *Implied Warranty in Sale of Accounts. Agent.*

1. The rule that there is an implied warranty in the sale of accounts that they are due and owing, is not changed by the fact that the vendee employs an agent to pay the money and get the account ; and when such vendee has brought suit to collect the account and failed in it, he is entitled to recover what he paid for the account, and his reasonable expenses in such suit.
2. The rule that a principal is chargeable with the knowledge of such facts as are known to his agent, is not available as a defence.

HEARD on the report of referees, December Term, 1882, POWERS, J., presiding. Judgment for defendant. The facts are sufficiently stated in the opinion of the court, and in the report of this case, 51 Vt. R. 414, except the following as to the agency found by the referees :

" Upon the trial Fitts claimed that he supposed Avery was purchasing the account ; but from the evidence and circumstances developed upon the trial we find that Fitts either knew or ought to have known that Avery was acting for some one else in the purchase of said account, although we find that he did not know for whom Avery was acting." . . . .

" Kingsley asked Avery if the account was all right. Avery said it was ; and if it was not Fitts was good for it. Kingsley then said to Avery that he would pay that for the account if Avery would get it. Avery thereafter saw Fitts and told him that he

had found a purchaser for the account at twenty-five per cent. discount. Fitts replied that he would not sell it at that price, but would take $100 for the account. Avery thereafter saw Kingsley again and communicated to him that Fitts declined to sell the account at twenty-five per cent. discount, but that Fitts offered to take $100 for it. Kingsley said that he would take it at $100, and requested Avery to see Fitts and get it. Avery thereafter saw Fitts and told him he had found a purchaser for the account at $100 ; and in a few days Avery having received the money from Kingsley went to Fitts and paid him $100 for the account and took it." . . . .

"The referees find that when Fitts told Avery he would sell the account at twenty-five per cent. discount if Avery would find a purchaser, neither Fitts nor Avery understood that Fitts was employed to sell the account, and Avery did not at any time offer to sell it. By the language Fitts then used he intended to inform Avery that he would sell the account to any one who desired to purchase it at twenty-five per cent. discount, and he could say so if he pleased ; but neither Fitts nor Avery understood that any agency was conferred on Avery in respect to the sale of the account."

*C. F. Kingsley* and *Prout & Walker*, for the plaintiff.

Plaintiff can recover on the implied warranty that the account in question was genuine and real; what it purported to be, " due and owing." *Gilchrist* v. *Hilliard*, 53 Vt. 592.

An unbroken line of decisions from *Beeman* v. *Buck*, 3 Vt. 53, to *Gilchrist* v. *Hilliard*, *supra*, holds that case, as well as assumpsit, is a proper form of action on a warranty. *Vail* v. *Strong*, 10 Vt. 457 ; *West* v. *Emery*, 17 Vt. 583 ; *Goodenough* v. *Snow*, 27 Vt. 720 ; *Pattee* v. *Pelton*, 48 Vt. 182.

Measure of damages is the amount paid for the account, interest, and costs of attempt at collection. *Coolidge* v. *Brigham*, 5 Metc. 68 ; *Delaware Bank* v. *Jarvis*, 20 N. Y. 226 ; *Potter* v. *Merchants' Bank*, 28 N. Y. 641 ; *Geffert* v. *West*, 33 Wis. 622.

*Hard & Safford*, for defendant.

Not only do the facts reported utterly fail to show any authority in Avery to represent Fitts, or any pretence by Avery that he had such authority, but the facts and circumstances reported show

affirmatively that Avery in this business was the authorized *agent of the plaintiff* and so acted.

But, even admitting that at the very time when he received the $100 of Avery, Fitts knew that Avery had falsely represented to the plaintiff that the account was valid and without set-off; if, as already shown, Avery was the *agent of the plaintiff*, how could Fitts be affected by Avery's fraud? The report shows that *Avery* had the same knowledge of Dyer's set-off that Fitts had; and the knowledge of Avery was, in law, knowledge in the plaintiff. Wade Notice, s. 687; *Hart* v. *Bank*, 33 Vt. 252.

A party who knows the falsity of a representation when it is made cannot complain of fraud, because he is not deceived.

The opinion of the court was delivered by

ROYCE, Ch. J. The referees have found that the account against John M. Dyer (of $121.61,) which it was agreed by the defendants in May, 1875, should be taken by the defendant Fitts to reimburse him for money due him from Avery, was sold to the plaintiff for $100; that Fitts received and has retained said $100; that upon said sale being made the defendant Avery, with the consent of Fitts, ordered said account paid to the plaintiff by endorsing thereon " pay the within account to Chester Kingsley, (Signed) Fitts & Avery "; that the plaintiff brought suit in the name of the defendants against Dyer to collect the account; that Dyer pleaded an offset and recovered upon said plea more than enough to balance said account. Having been defeated in his attempt to collect the account, the plaintiff claims to recover of the defendants the amount he paid for the account and the money expended in his effort to collect it.

It was held in *Gilchrist* v. *Hilliard*, 53 Vt. 592, that upon the sale of accounts the vendor was bound to make them what they appeared to be—accounts due and owing. The account sold to the plaintiff was not due and owing at the time of the sale; hence there was a breach of the implied warranty of the defendants at the time of their making the sale; and the defendants are liable to make good the loss the plaintiff has sustained in consequence

of such breach, unless they are excused from liability on account of the circumstances under which the sale was made.

The reason why Fitts offered to sell the account at a discount was because he did not want anything to do with Dyer. Neither he nor Avery then thought that Dyer would claim any offset to the account. His offer to sell was an open one; he was ready to sell to any one who might choose to purchase at the discount named, and so signified to Avery. Neither Fitts nor Avery understood that Avery was employed to sell the account, or that any agency was conferred upon him in respect to its sale, and he did not at any time offer to sell it. By the language used by Fitts he intended to inform Avery that he would sell the account at the discount named to any one who desired to purchase, and he could say so if he pleased. Avery informed the plaintiff that Fitts would sell the account for $100; the plaintiff told Avery that he would purchase it at that price, paid him the money and requested him to see Fitts and get it. Avery's authority was limited to the payment of the money and procurement of the account. If the plaintiff had personally paid the money to Fitts and taken an assignment of the account, there can be no doubt but that he would have been liable upon an implied warranty that it was due and owing.

We are unable to see how the fact that the money was paid by an agent of the plaintiff and the account delivered to him for the plaintiff changes the legal liability of the defendants. The principle that a principal is chargeable with the knowledge of such facts as are known to his agent, is not available as a defense. There was no duty resting upon the plaintiff to make inquiry as to the validity of the account. It is evident that Fitts, when he offered the account for sale, intended to give the purchaser to understand that it was due and owing; and as it was not due and owing he cannot be permitted to retain the consideration paid for it.

The judgment is reversed, and judgment on the report for the plaintiff for the sum of $197.10, as found due by the referees, and interest.